UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              CASE NO. 4:14CV00423 BSM

ONE ASSORTMENT OF
93 NFA-REGULATED WEAPONS                                    DEFENDANTS

## THE UNITED STATES OF AMERICA'S TRIAL BRIEF

The United States of America submits the following trial brief, which discusses issues the

United States anticipates the Court may need to address at trial.

**I.        Burden of Proof**

Congress modified much of the law governing asset forfeiture actions in 2000 with the

Civil Asset Forfeiture Reform Act ("CAFRA").  Those reforms, however, did not apply equally

to all forfeiture actions.  For example, CAFRA changed the burden of proof; it required that the

United States prove by a preponderance of the evidence that property is subject to forfeiture.  18

U.S.C. § 983(c).  The provisions of Section 983 only apply to cases that are governed by a "civil

forfeiture statute" as that phrase is defined in that section.  *See* 18 U.S.C. § 983(i) (defining the

term "civil forfeiture statute").  Section 983 omits Internal Revenue Code forfeitures from the

definition of civil forfeiture statutes.  18 U.S.C. § 983(i)(2).  Forfeitures under the National

Firearms Act ("NFA") are Internal Revenue Code forfeitures and are, therefore, excluded from

CAFRA.  *See, e.g., United States v. One TRW, Model M14, 7.62 Caliber Rifle*, 441 F.3d 416,

418 (6th Cir. 2006).

Internal Revenue Code forfeitures are governed by pre-CAFRA law.  Under pre-CAFRA

law, the United States must first establish probable cause that the property is subject to forfeiture.

*United States v. Any and All Radio Station Transmission Equip.*, 218 F.3d 543, 548 (6th Cir.

2000).  This probable cause finding requires the same proof necessary to obtain a search warrant. *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004).  Once the United States establishes probable cause, the burden shifts to the claimant to prove by a preponderance of the evidence that the property was not related to a violation of federal law. 19 U.S.C. § 1615; *see also United States v. Certain Real Property 566 Hendrickson Blvd.*, 986 F.2d 990. 995 (6th Cir. 1993) (citing *United States v. Twenty-Two Thousand Two Hundred Eighty Seven Dollars in U.S. Currency*, 709 F.2d 442 (6th Cir. 1983)).  If the claimant offers such evidence, the United States may offer "probative admissible evidence to contest the claimant's proof." *United States v. $129,727.00 U.S. Currency*, 129 F.3d 486, 492 (9th Cir. 1997).

## II.        Elements of the Offense

The United States can establish a violation of the NFA if it proves that (1) Sangeeta Mann knew that she had the firearms in her possession; (2) Sangeeta Mann knew the weapons were regulated by the NFA, (3) the weapons were capable of operating as designed or could readily be put in operating condition, and (4) the firearm was not registered to the Sangeeta Mann in the NFRTR.  *See* 8th Cir. Jury Instructions 6.26.5861; *see also United States v. Dukes*, 432 F.3d 910, 915 (8th Cir. 2006).  Any weapon involved in an NFA violation is subject to forfeiture.  *See* 26 U.S.C. § 5872.

Elements three and four are not in dispute.   The Defendant Firearms meet the functionality requirement.  The Defendant Firearms consist of machinegun and silencers.  In his responses to the first set of requests for admission propounded by the United States, Randeep Mann admitted that each of the weapons was designed to be a machinegun or a silencer, and Sangeeta Mann and Trent Pierce admitted that they have no evidence or other reason to dispute

that the Defendant Firearms all qualify as firearms under the NFA. Similarly, all parties agree that none of the Defendant Firearms were registered to Sangeeeta Mann. Sangeeta Mann admits that none of the weapons were ever registered to her, and Randeep Mann acknowledges that all of the weapons are registered to either him or his business, Exotic Weaponry.

Although the United States anticipates that claimants will challenge the existence of elements one and two, the facts about which the parties agree establish those elements as well. Sangeeta Mann knew that the Defendant Firearms were regulated by the NFA, and the evidence shows that Sangeeta Mann knew that she had the Defendant Firearms in her possession.

Typically, the knowledge requirement is satisfied if the person knew of the characteristics of the weapon that make it subject to the NFA; the United States does not have to prove the individual's knowledge of the registration requirement. *See United States v. Barr*, 32 F.3d 1320, 1324 (8th Cir. 1994). Here, however, Sangeeta Mann was aware of that the Defendant Firearms were subject to the NFA and that it was illegal for her possess them; she had that information because the United States Attorney specifically warned her that that possession was a crime. The letter to Sangeeta Mann's attorney read as follows:

> This letter is to inform you that Sangeeta Mann and Kundan Mann may be in unlawful possession of firearms not registered to them under the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Section 5861(d). The United States requests that any such firearms be lawfully transferred to a Class III federal firearms licensee by Monday, May 18, 2009.

The United States anticipates Sangeeta will admit that she received a copy Jane Duke's warning letter, but she claims that she delegated responsibility for addressing the issue to her attorney. Delegation of authority is not a bar to forfeiture here because unlike in a criminal proceeding, ineffective assistance of counsel is not a defense to a civil forfeiture action. *Irwin v. Veterans Affairs*, 498 U.S. 89, 91 (1990) ("Under our system of representative litigation, each party is

deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.") (internal citations and punctuation omitted); *see also United States v. $250,000 in U.S. Currency*, 808 F.2d 895, 900 (1st Cir. 1987) (acknowledging that forfeiture statutes are predominantly civil in nature without the full range of constitutional protections usually associated with criminal sanctions); *Hosick v. Steele*, No. 4:13CV1060, 2015 WL 1868675, *2 (E.D. Mo. April 23, 2015) ("In most instances, negligence on the part of a prisoner's post-conviction attorney does not qualify as cause, and prisoners are bound to the actions and inactions of their counsel.").

The United States can satisfy the knowing possession element by proving either actual or constructive possession. *See* 8th Cir. Jury Instructions 8.02 ("Whenever the word 'possession' has been used in these instructions it includes actual as well as constructive possession and also sole as well as joint possession."). The Eighth Circuit has joined every other circuit to address the issue of knowing possession and has "held that the holder of the key, be it to the dwelling, vehicle or motel room in question, has constructive possession of the contents [of the locked space]." *United States v. Thomas*, 593 F. 3d 752, 759-760 (8th Cir. 2010) (citing *United States v. Timlick*, 481 F.3d 1080, 1083 (8th Cir. 2007)).

Prior to Randeep Mann's arrest, Randeep Mann and Sangeeta Mann jointly possessed Randeep Mann's gun collection, and after his arrest and detention, Sangeeta Mann remained in possession of collection because she maintained her access to the keys to the gun vault and the combinations to the gun safes. *See United States v. Mann*, 701 F.3d 274, 305 (8th Cir. 2012) ("knowledge of [a firearm's] presence, combined with control is constructive possession") (quoting *United States v. Smith*, 508 F.3d 861, 866 (8th Cir. 2007)); *United States v. Cox*, 627 F.3d 1083, 1085 (8th Cir.2010) ("Constructive possession is established by proof that the

defendant had control over the place where the firearm was located, or control, ownership, or dominion of the firearm itself."). "Control is shown by the power to dispose of the firearm or assure its delivery." *Id.* The United States can also prove control by showing that Sangeeta Mann knowingly stored the weapon at her home. *See United States v. Zrust*, 835 F.2d 192, 193 (8th Cir. 1987) ("Control is also evidenced by storing a . . . firearm in one's home."); *see also United States v. Augustine*, 663 F.3d 367, 373 (8th Cir. 2011) (citing *United States v. Abdul-Aziz*, 486 F. 3d 471, 477 (8th Cir. 2007)) ("'Constructive possession of the firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself.' Constructive possession can also be established 'by showing that the firearm was seized at the defendant's residence.'"). That the Sangeeta Mann knew the firearms were in her home is not in dispute.

Here, much like the defendant in *Augustine*, Sangeeta Mann had keys and codes to access the locked gun case where the Defendant Firearms were stored, and she intended to access the weapons as evidenced by her conversation with Randeep Mann about the selling the weapons. Additionally, Sangeeta Mann admits that she entered at least one of the gun safes to access other items in the safe. *United States v. Anderson*, 618 F.3d 873, 880 (8th Cir. 2010) (rejecting a defendant's argument that he did not possess a weapon where the evidence showed that the defendant had the keys to the locked storage unit where the weapon was found and he admitted facts showing that he knew of the weapons presence); *United States v. Cuevas-Arrendondo*, 469 F.3d 712, 716 (8th Cir. 2006) (holding that the evidence was sufficient to sustain a drug conviction based on constructive possession where the defendant possessed the keys that unlocked the front door of the trailer and bedroom were the contraband was found).

**III.**　　　**Sangeeta Mann's Standing to be a Party**

Sangeeta Mann lacks a sufficient interest in the Defendant Firearms to be a party to this action.  Standing is an issue in every civil forfeiture lawsuit.  *United States v. 392 Lexington Parkway South*, 386 F. Supp. 2d 1062, 1067 (D. Minn. 2005) (quoting *United States v. One Lincoln Navigator*, 328 F.3d 1011, 1013 (8th Cir. 2003)).  A party who wants to put the United States to its burden of proof must first establish its standing to be a party.  *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002) (stating that the standing requirement "ensure[s] that the government is put to its proof only where someone with a legitimate interest contests the forfeiture.").  A party's obligation to prove standing lasts throughout the entirety of the litigation, and the level of proof required will vary depending on the stage of the proceedings when the United States brings its standing challenge.  *Medalie v. Bayer Corp.*, 510 F.3d 828, 829-30 (8th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  For example, at the pleading stage, the claimant may rely on statements in its pleadings to demonstrate its standing; however, at the summary judgment stage, it must also come forward with admissible evidence to meet its burden.  *Lujan*, 504 U.S. at 561 (holding that to defeat a motion for summary judgment, a party must come forward with evidence and not rely solely on allegations); *see also Bishoff v. Osceola County, Florida*, 222 F.3d 874 (11th Cir. 2000) ("[W]hen standing is raised at the summary judgment stage, [a party] can no longer rest on mere allegations.  Instead, [the party] must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.") (internal citations and punctuation omitted).

Here, Sangeeta Mann solely relies on the fact that the Defendant Firearms were purchased by her husband to meet her burden of proving standing to be a party to and request

relief in this action.  That is not sufficient.  While it is true that under Arkansas law, there is a presumption that all property acquired by either spouse subsequent to the marriage is martial property, *McDermott v. McDermott*, 336 Ark. 557, 561 (1999), Arkansas courts have said that "the law regarding marital property does not apply in situations other than divorce." *Cloud v. Brandt*, 370 Ark. 323, 331 (2007) (*citing Ellis v. Ellis*, 315 Ark. 475, 868 S.W.2d 83 (1994)). The Eighth Circuit has refused to apply divorce law when deciding whether a spouse has standing to challenge the forfeiture of property belonging to the other spouse. *See United States v. Cochenour*, 441 F.3d 599, 601 (8th Cir. 2006); *see also United States v. Totaro*, 345 F.3d 989, 997-98 (8th Cir. 2003) ("Divorce law does not govern a spouse's claimed interest in forfeited property"); *United States v. Sigillito*, 938 F. Supp. 2d 877, 889 (E.D. Mo. 2013) (applying *Totaro* and *Cochenour*).   Under *Totaro* and *Cochenour*, unless the spouse contesting the forfeiture can prove a legal right, title, or ownership interest through a tenancy by the entirety or separate ownership then that spouse's claim with fail due to a lack of standing.

*Totaro* was a criminal forfeiture case in which a wife was fighting to prevent the forfeiture of two parcels of real estate she occupied with her husband. *Totaro*, 345 F.3d at 991. The husband was convicted of mail fraud, wire fraud, money laundering, unlawful money transactions, and RICO racketeering, and the United States asserted that the real estate was proceeds of the husband's criminal offense. *Id*. at 992.   The married couple acquired one piece of property by quitclaim deed in 1974, and the the wife purchased a second parcel in 1982 with a loan from her father. *Id*.  In 1978, the wife acquired full title to the first property and was, from that time forward, the sole holder of title to the property. *Id*.  The husband's criminal activity started in 1984, and he funneled his proceeds into the checking account the wife used to make the mortgage payments. *Id*.   From 1994 to 1997, the couple made over $339,000 in

improvements on their home. *Id*. In that time, the wife estimated that at no time did she ever make more than $35,000 a year, and from 1990 until 1999, her wages averaged $2,137 per year. *Id*. at 993. The Eighth Circuit concluded that because the proceeds from the husband's criminal activities funded a large portion of the renovations, the wife's only legitimate claim was for the land and unimproved home. *Id*. at 994-95. Ultimately, the Eighth Circuit held that because the wife's interest in the property had vested before the husband's illegal proceeds tainted the property, she had proven a substantial interest in the property to establish standing to challenge the forfeiture. *Id*. at 996-97. The "vexing question" the Court faced, however, was how to determine where the wife's interest in the property ended and where the husband's interest in the property began. *Id*. at 998. The Court ruled that because the wife had standing, the district court should use divorce law on remand to determine how to separate the property as the government was simply "stepping into [the husband's] shoes." *Id*. at 999. The Court did not use divorce law to determine whether the wife had standing.

In *Cochenour*, a wife appealed a district court order forfeiting her husband's property. 441 F.3d at 601. The district court found that the wife had "no legal interest in [her husband's] forfeited property." *Id*. The wife argued on appeal that although the forfeited property was held solely in her husband's name, it was marital property that she and her shared as tenants by the entirety. *Id*. The Eighth Circuit affirmed the district court because "the Missouri statue relied upon by [the wife] specifically limits its applicability to dissolution of marriage." *Id*. The Eighth Circuit explained that because divorce law does not govern a spouse's claimed interest in forfeited property, the wife lacked the requisite ownership interest to prove a tenancy by the entirety, and she did not have standing to challenge the forfeiture. *Id*.

8

In *Sigillito*, a defendant's wife alleged that she had an interest in properties the government sought to forfeit from her husband because "[u]nder Missouri law, property owned by husband and wife [is] presumed to be marital." 938 F. Supp. 2d at 889. The district court presumed that the wife based this interest off of "Missouri Revised Statute section 452.330, which governs property division upon dissolution of marriage." *Id*. The district court rejected the notion that the wife had an interest in the properties, relying on *Totaro* and *Cochenour* and Section 451.520 of the Missouri Revised Statutes, which limited the applicability of Section 452.330 to divorce. *Id*. Without such an interest the district court held that the spouse lacked standing to challenge the forfeiture. *Id*.

Sangeeta Mann acknowledges that Randeep Mann is the person who purchased the Defendant Firearms. She has not articulated any claim separate and apart from her husband's title to the firearm, and the burden is on her to do so. Absent some credible proof that Sangeeta Mann has a separate interest in the Defendant Firearms, she lacks standing.

## IV.        Randeep Mann's Innocent Ownership Defense

If the Court determines that Sangeeta Mann's possession of the Defendant Firearms was a violation of the NFA, the weapons must be forfeited to the United States regardless of Randeep Mann's interest in them. First, innocent ownership is not a defense in an NFA case. Second, even if the Court found that Randeep Mann could assert such a defense in this type of case, he has not done so, and the time to raise the defense passed. Finally, his actions do not qualify for the defense.

The Constitution does not require that Congress provide an innocent ownership defense to any forfeiture action. *Bennis v. Michigan*, 516 U.S. 442, 446 (1996) (upholding as

constitutional a forfeiture statute that lacked an innocent owner provision). Further, courts should not read an innocent owner defense into a statute unless the statute explicitly provides for the defense. *See, e.g., United States v. Davis*, 548 F.3d 84, 93-95 (2d Cir. 2011) (rejecting a claimant's contention that Title 19, United States Code, Section 1595(c), a statute excluded from the uniform innocent owner provision in Section 983, contains an innocent owner defense). Similarly, Randeep Mann can point to nothing in the NFA that provides for an innocent owner defense to forfeitures under that statute. Accordingly, it is no defense to this action that Sangeeta Mann rather than Randeep Mann was the criminal actor.

Even if the Court finds that there is an innocent owner provision in the NFA forfeiture statute, Randeep Mann cannot assert that as a defense in this particular case because he has not raised it in his pleadings. *See Dollar v. Smithway Motor Xpress, Inc.*, 710 F.3d 796, 807-08 (8th Cir. 2013) ("Federal Rule of Civil Procedure 8(c)(1) requires defendants to plead affirmative defenses . . . the list of enumerated defenses [in Rule 8] is exemplary rather than exclusive, and the failure to plead this particular affirmative defense results in waiver."); *see also United States v. Brown*, No. 3:12CV125, 2013 WL 2103630, *5 (N.D. W.Va. May 14, 2013) (refusing to allow a claimant to assert an innocent owner defense because she did not raise it in an answer). Randeep Mann's answer does not purport to raise any claim of innocent ownership. If the innocent ownership provision exists (and the United States does not concede that it does), it cannot defeat this forfeiture because Randeep Mann is procedurally barred from raising it for the first time at this stage of the proceedings.

Even if the innocent owner defense in Title 18, United States Code, Section 983 applied (and it does not), Randeep Mann would not benefit from that provision. To qualify as an innocent owner under that statute, Randeep Mann would have to show that one of two things, (1)

that he was unaware of the criminal activity involving his property or (2) that he took all reasonable measures to stop the illegal activity.  18 U.S.C. § 983(d)(2)(A).  Randeep Mann fails both prongs of the defense.  In fact, he encouraged Sangeeta Mann's illegal possession of his gun collection when he asked her to sell the weapons while he was detained awaiting his trial.

## V.        Randeep Mann's Fraud-on-the Court Defense

Randeep Mann intends to present evidence that, in his view, show that his prosecution was a fraud on the Court.  The United States disagrees with the premise of the argument and asks that the Court disregard as irrelevant to the issues in this civil forfeiture case.  The Court should decline to explore that defense because it is barred by the doctrine of collateral estoppel and because even if Randeep Mann's factual assertions were true—and they are not—they would not provide a sufficient basis to deny the United States the relief it seeks in this case.

The Defendant Firearms were recovered from the Mann residence while Randeep Mann was detained on a bombing-related offense. Randeep Mann was ultimately convicted of that offense, and he should not be allowed to use this civil forfeiture proceeding to collaterally attack that conviction.  *United States v. Parcel 03179-005R*, 287 F. Supp. 2d 45, 63 (D.D.C. 2003) (holding that the doctrine of issue preclusion bars a defendant from re-litgating factual issues in a civil forfeiture case that a jury found against him in a criminal case); *United States v. 101 North Liberty Street*, 80 F. Supp. 2d 1298, 1308 n.29 (M.D. Ala. 2000) (recognizing that a defendant who has been convicted of a criminal offense is barred from denying involvement in the crime in the civil forfeiture case).

Randeep Mann's fraud-on-the-court argument is relevant, if at all, to an argument to apply the exclusionary rule to the information law enforcement learned as a result of Randeep

Mann's arrested.  Even if the Court accepted Randeep Mann's argument (and it should not), the exclusionary rule should not apply so broadly as to reach a defendant's responses in discovery that were made with the assistance of counsel years after the alleged constitutional violation.  *See United States v. 47 West 644 Route 38, Maple Park, Illinois*, 962 F.Supp. 1081, 1088-90 (D. Ill. 1997).  In *47 West 644 Route 38*, the court recognized that the purposes of the exclusionary rule would not be met by applying it to discovery responses that were provided four years after the illegal search in a case in which the defendant was represented by an attorney.  *Id*. at 1090.  A similar result should occur here.  Even if the Court determined that there was an unlawful taint on the search of Mann's home (and no such violation occurred), this Court should not allow Randeep Mann to turn this case into a mini-trial on all of the offenses for which he was charged. The parties have litigated these facts once, and there is a substantial record on which the Court can rely when making its determination about what happened.

CHRISTOPHER R. THYER
UNITED STATES ATTORNEY

By:   */s/ Cameron C. McCree*
    CAMERON C. McCREE (2007148)
    MICHAEL GORDON (00795383)
    Assistant U.S. Attorneys
    P.O. Box 1229
    Little Rock, Arkansas 72203
    (501) 340-2600
    Cameron.McCree@usdoj.gov
    Michael.Gordon@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2016, I filed this trial brief with the Clerk of the Court using CM/ECF system, which will send notification of the filing to all counsel of record.

    */s/ Cameron C. McCree*
    CAMERON C. McCREE