IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA                                        PLAINTIFF

v.                        4:14-CV-0423 BSM

ONE ASSORTMENT OF 93
NFA-REGULATED WEAPONS                           DEFENDANTS IN REM

SANGEETA MANN                                                      CLAIMANT

TRIAL BRIEF OF SANGEETA MANN

*Discussion of factual and legal issues.*

This case involves the future of a number of firearms seized from the home which Sangeeta Mann shared with her husband Randeep Mann.

As Sangeeta Mann sees it, the ultimate legal issue is whether the weapon should be wholly forfeited to the government (and perhaps destroyed) or whether is should be sold and that she be given fifty percent (50%) of the net proceeds of the sale. Obviously, her position is that the weapons should not be destroyed but rather should be sold and that she is entitled to half of the net proceeds. The government claims that she is not entitled to the half because the firearms were in her house for several months although she did not have the proper credentials under the NFA to be in what the government asserts was possession of them.

As of the writing of this brief, she and the government are attempting to arrive at stipulations. Whether stipulations are reached or not, there is no question that the weapons were seized in August, 2009 from the house which she had shared with her husband Randeep Mann until his arrest in March, 2009.

Sangeeta Mann anticipates calling her former attorney, now-Judge Cathleen Compton, to testify to certain matters relevant to the issues. [1] Sangeeta Mann anticipates that Judge Compton's testimony will essentially be that:

- ❏ She represented Ms. Mann from shortly after Randeep Mann's arrest in March, 2009 until she exited the case in late October, 2009.

- ❏ She received a letter from Jane Duke dated April 16, 2009 in which Ms. Duke made known the government's position that Ms. Mann was in effective control of firearms although she was not personally licensed to possess them. The letter set a deadline of May 18, 2009.

- ❏ It was Judge Compton's custom when she was in private practice to send all such client-related correspondence to the client. She understands that a copy of the Duke letter was found at the Mann residence at the time of the execution of the search warrant.

---

[1] Because she is a sitting judge, she can testify only in response to a subpoena. She has been subpoenaed.

- ❏ In response to this letter and in conjunction with other lawyers representing the Mann interests, Judge Compton undertook efforts to find an appropriate place to move the firearms. The U.S. Attorney was aware of the efforts.

- ❏ Because of those discussions, forbearance because of issues involving travel schedules and focus on other Mann-related matters, Judge Compton was surprised when the government obtained a search warrant and seized the weapons in August, 2009.

- ❏ At this juncture some seven years later, Judge Compton does not recall discussing this matter with Ms. Mann. However, she can say that Ms. Mann would have deferred to counsel in the handling of the removal of the firearms, and this is the type of matter which would have been appropriately handled by the lawyers and not the client.

It is also anticipated that Sangeeta Mann may testify. If she does, she will state that she has no recollection at this point concerning receipt of the letter or discussions about it with Judge Compton. She will also state that she would have deferred to counsel in the handling of these matters.[2] She will also state that she had

---

[2] At the time of her Answers to Interrogatories and Requests for Admission, Sangeeta Mann was unaware of some of the conversations and correspondence between the US Attorney and various counsel. Undersigned

nothing to do with the firearms and indeed knew very little about them. She occasionally accessed one of the safes because it also contained jewelry and documents.

The government poses the question of "Whether the facts are sufficient to establish that Sangeeta Mann was in constructive possession of the Defendant Weapons." That is not an accurate and complete formulation of the question at issue. There is a necessary corollary question: Even if Sangeeta Mann had constructive possession, did the government acquiesce or condone it?

First, Sangeeta Mann argues that she did not constructively possess the weapons. Constructive possession "requires knowledge of an object, the ability to control it, and the intent to do so." *United States v. Cuevas-Arrendondo*, 469 F.3d 712, 715 (8th Cir.2006). Even assuming that she had knowledge of the objects and the ability to control them, the evidence should establish that she did not have the requisite intent to do so. She did not disturb the weapons. She did not access them. They remained secured in safes the entire time.

But even assuming that the government establishes constructive possession, the evidence should establish that the government condoned or acquiesced in the

---

counsel has informed the US Attorney that amended answers would be forthcoming and which would reflect the current status of Sangeeta Mann's knowledge.

possession and should be estopped from claiming otherwise at this point. Among the bases for that conclusion are:

- ❏ The Duke letter was sent to the attorneys only, and not to Sangeeta Mann.

- ❏ The Duke letter gave the attorneys a month to move the firearms, thereby negating the government's argument that Sangeeta Mann was in irremediable violation of the NFA when Randeep Mann was incarcerated.

- ❏ Subsequent negotiations between counsel and the government extended the deadline set by the Duke letter.

- ❏ The government was aware that the attorneys were attempting to move the firearms.

- ❏ Sangeeta Mann deferred to the attorneys' handling of the matter.

Sangeeta Mann's reliance on her attorney to handle the matter is the functional equivalent of an advice of counsel defense. To rely upon the advice of counsel in his defense, a defendant must show that she: (i) fully disclosed all material facts to her attorney before seeking advice; and (ii) actually relied on her counsel's advice in the good faith belief that his conduct was legal." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir.2006). The material facts were disclosed to counsel by the government.

Deferring to counsel's handling of the matter was done in good faith.

Moreover, it is highly inequitable under these circumstances of extension of deadlines and acquiesence for the government to now claim that Sangeeta Mann is personally responsible for the immediate nonremoval of the firearms and, by virtue of that immediate nonremoval thus forfeits her claim to proceeds. The government should be estopped from claiming forfeiture of proceeds under those circumstances. A party who lulls another party into inaction may be subject to equitable estoppel. *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1329 (8th Cir.1995).

## **STANDING**

The government also claims that Sangeeta Mann does not have standing. That is wrong. It does not appear to be in dispute that the weapons at issue were acquired during the marriage. Whether by testimony or stipulation, it will be established that the Manns were married in November, 1983 and that their acquisitions of property were achieved as a result of their earnings during their marriage.

The government also appears to concede that the firearms weres not inherently contraband— as, say, a nuclear weapon might be— but rather were weapons which may be possessed by certain categories of registered and regulated persons. *Henderson v. United States*, 135 S.Ct. 1780 (2015), has established that the legal inability to possess a weapon because of one's status as a felon, a status of both

Randeep and Sangeeta Mann, does not deprive the owner of a firearm of all incidents of ownership, but rather only the right to possess it. The *Henderson* court explicitly held that a felon could select a dealer or other third party to sell firearms and to provide the felon-owner any proceeds thereof. Therefore, the question becomes one of the disposition of the proceeds of any such sale.

This Court has already determined, in the context of the Randeep Mann disability policy litigated within the criminal case (4:09CR00099 BSM) that Sangeeta Mann is entitled to fifty percent (50%) of the proceeds of property acquired during the marriage even though Randeep Mann's name may be the only name on the ownership documents and even though Randeep Mann had a restitution obligation. (Doc. 368, entered May 8, 2013.) The government did not appeal. Principles of *res judicata* and collateral estoppel compel the same result here, but Sangeeta Mann hereby discusses the issue as being litigated *de novo* and not necessarily compelled by those claim and issue preclusion doctrines.

Arkansas law regarding marital property is significantly different from what the government attempted to have this Court hold in the disability litigation. For example, in *Carroll v. Carroll*, 2011 Ark. App. 356, 4-5. 384 S.W.3d 50, 53-54, the Arkansas Court of Appeals wrote in overturning a lower court decision that a hunting club membership was nonmarital:

>Here, the trial court's findings were clearly erroneous. The parties were married on February 20, 1981, and it is undisputed that the Jackson Point Hunting Club membership was purchased after the parties were married. All property acquired by either spouse subsequent to the marriage is considered marital property except for several specific statutory exceptions, including property acquired by gift or by reason of the death of another and property acquired in exchange for other nonmarital property. Ark.Code Ann. § 9–12–315 (Repl.2009). There is a presumption that all property acquired during a marriage is marital property. *McDermott v. McDermott*, 336 Ark. 557, 986 S.W.2d 843 (1999). As the hunting club membership was purchased after the marriage, it is presumptively marital property. Richard, as the party arguing that the membership interest was his separate property, bears the burden of rebutting the presumption that the property was marital property. *Aldridge v. Aldridge*, 28 Ark.App. 175, 773 S.W.2d 103 (1989) ("The burden is on the party who asserts an interest in property to establish that it is in fact separate property not subject to division.").

This is well-established Arkansas law. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007); *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000). In *Frigon v. Frigon*, 89 Ark. App. 180, 201 S.W.3d 436 (2005), the court held that benefits previously paid and to be paid in future under husband's disability income protection policy, pursuant to claim filed by husband during marriage, were a marital asset subject to equal division.

The government then had cited *United States v. Seymour*, 275 Fed.Appx. 278

(5th Cir. 2008), for the proposition that federal restitution requirements defeat a marital interest. That is not the holding in *Seymour*. Rather, it is that federal restitution requirements defeat Mississippi marital rights. This is a decision wholly dependent upon Mississippi law.

At issue in *Seymour* was whether Mississippi's equitable-distribution system for marital property should be applied to a garnishment proceeding. Pursuant to the FDCPA, the Seymour court made its decision upon an interpretation of Mississippi law. Id. ("Mississippi law controls to what extent Ralph and Judy Seymour's joint account is subject to this garnishment.") Seymour's applicable quote, "no right to property vests by virtue of the marriage relationship alone prior to entry of a judgment . . . pursuant to dissolution of the marriage," is a direct cite to *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994).

In *Seymour*, the court found that in Mississippi marital property rights do not vest prior to a dissolution. Arkansas law is explicitly to the contrary. In *Lowe v. Morrison*, 289 Ark. 459, 461, 711 S.W.2d 833, 834 (1986), the Arkansas Supreme Court wrote:

> Noticeably absent is the right to partition an estate by the entirety where the tenants are still married. An estate by the entirety is peculiar to marriage and entails the right of survivorship. The right of survivorship to the whole can only be dissolved in a divorce proceeding, by death, or by

9

> the voluntary action of both parties.
>
> In various cases we have touched on the question raised by this suit. First the right of survivorship cannot be defeated by an outsider such as a judgment creditor. Ellis v. Ashby, 227 Ark. 479, 299 S.W.2d 206 (1957). A third person can obtain a judgment against a husband or wife and that judgment will be a lien against the debtor's interest in the land. Franks v. Wood, 217 Ark. 10, 228 S.W.2d 480 (1950). That claim cannot, however, defeat the interest of the other spouse. Moore v. Denson, 167 Ark. 134, 268 S.W. 609 (1924). Only on the death of the other spouse can that claim be perfected. Ellis v. Ashby, supra.
>
> In Davies v. Johnson, 124 Ark. 390, 187 S.W. 323 (1916), we held that partition would not lie against an estate by the entirety.
>
> Further, a holder "the interest of one tenant by the entirety cannot oust the other tenant from possession, and can only claim one-half of the rents and profits." Morris v. Solesbee, 48 Ark. App. 123, 125, 892 S.W.2d 281, 282 (1995). Further, "[t]he remaining tenant is not only entitled to possession plus one-half of the rents and profits, but the right of survivorship is not destroyed or in anywise affected." Id.

The government had asserted that the policy belongs to Randeep Mann alone because only his name is on the policy. To that end, the government cited *Maloy v. Stuttgart Memorial Hosp.*, 316 Ark. 447, 872 S.W.2d 401 (1994). However, *Maloy* did not involve marital property, but rather a parent-child joint tenancy. Thus, under Arkansas law, the creditor's interest in this marital property cannot reach Sangeeta Mann's share.

In this regard, *United States v. Craft*, 535 U.S. 274, 122 S.Ct. 1414 (2002), must be mentioned. In *Craft*, the wife of a delinquent taxpayer sought to obtain all the proceeds of the sale of marital property, arguing that as tenants by the entirety under Michigan law, the government could not get her husband's half. The Supreme Court rejected that argument, but it is noticeable that government was only seeking to obtain half the property. In other words, the government conceded that it was not entitled to Mrs. Craft's half of the proceeds of the sale of the tenancy by the entirety.

It should also be noted that the government's position is at odds with it position regarding the sale of other Mann marital assets. For instance, the government received half of the net proceeds of the sale of ammunition.

The government apparently contests whether Sangeeta Mann has standing to be a party to this action. The above discussion demonstrates that she does have standing.

## *Proposed findings of fact and conclusions of law*

Although the United States Attorney sent a letter to counsel suggesting removal of the firearms from the Mann residence, the letter was not sent to Sangeeta Mann by the government. That letter set a one-month goal for removal.

Sangeeta Mann's attorney, Cathleen Compton, sent a copy of the letter to Ms. Mann. As between the two of them, Sangeeta Mann deferred to the advice of Ms.

Compton.

Ms. Compton and the other attorneys made attempts to find a location in which to move the firearms. The government was aware of those attempts and extended the time for removal.

Sangeeta Mann made no attempt to control the weapons. Thus she did not constructively possess them. Even if she did constructively possess them, the chronology demonstrates government condonation or acquiesence in their possession.

The firearms at issue are not inherently contraband. They may be possessed by someone with proper registration and regulatory clearance.

Randeep and Sangeeta Mann are both felons. Neither can properly possess a firearm. Under *Henderson v. United States* felon status does not disqualify them from the monetary benefit of ownership even if they cannot possess.

Randeep and Sangeeta Mann were married in November, 1983. The possessions they have acquired are the fruit of income earned by them during the course of their marriage.

The firearms involved in this case were acquired by Randeep Mannduring the marriage marital property within the definition of Arkansas law. Sangeeta Mann is entitled to fifty percent (50%) of the net proceeds of the sale of the weapon.

CONCLUSION

Sangeeta Mann respectfully requests the relief described in this brief.

                              SANGEETA MANN

                              /s/ Jeff Rosenzweig
                              _____
                              JEFF ROSENZWEIG
                              Ark. Bar No. 77115
                              300 Spring St. Suite 310
                              Little Rock, AR 72201
                              (501) 372-5247
                              jrosenzweig@att.net

                              *Attorney for Claimant Sangeeta Mann*

## CERTIFICATE OF SERVICE

    I, Jeff Rosenzweig, hereby certify that I have served all counsel of record through the CMECF system this 17th day of August, 2016.

                              /s/ Jeff Rosenzweig
                              _____
                              JEFF ROSENZWEIG