IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-00423-BSM |
| | ) | |
| ONE ASSORTMENT OF 93 | ) | |
| NFA-REGULATED WEAPONS, | ) | |
| | ) | |
| *Defendants.* | ) | |

## TRIAL BRIEF OF CLAIMANT DR. MANN

Plaintiff waited past the time limitation for filing this action, and Dr. Mann will be filing a motion to amend the answer to assert this defense in common with the other claimants on even date herewith.

Regardless of what burden applies to the plaintiff in going forward with a forfeiture action, the ultimate burden of proof is preponderance of the evidence.  In order for there to have been a violation of the substantive criminal statute the plaintiff asserts, Mrs. Mann and/or Kundan Mann would have needed to have knowing power to control or dispose of the firearms that are the subject of the plaintiff's complaint.  Plaintiff cannot show that by a preponderance of the evidence.

Collateral estoppel does not bar Dr. Mann from raising the different issues relating to the proceedings against him that were not litigated in the underlying criminal action, in part because the averment of fraud on the courts pierces the veil of legitimacy normally accorded to prior judgments even when the issues previously litigated were not the precise ones before the present tribunal.

# **Table of Contents**

Caption and Introduction ............................................................................... i

Table of Contents ........................................................................................... ii

Table of Authorities ...................................................................................... iii

Argument ........................................................................................................ 1

I.      Dr. Mann joins in Dr. Pierce's plea of statute of limitations, and will be
        filing a motion for leave to amend the answer to the plaintiff's latest
        complaint to incorporate it. ................................................................ 1

II.     Whether CAFRA does or does not apply to a non-tax case in which the
        plaintiff seeks to forfeit a private person's property, the ultimate
        standard is the preponderance of the evidence, on which the plaintiff
        cannot established that Mrs. Mann or Kundan Mann was in unlawful
        possession of the res under the applicable legal standard for unlawful
        possession. ....................................................................................... 2

        A.      The ultimate burden of proof for a forfeiture under 26 U.S.C. § 5872
                and 28 U.S.C. § 2461 or any other statute is preponderance of the
                evidence.  The few, strained citations on which the plaintiff relies for
                arguing it is a lower standard relate to its burden of going forward, not
                the burden of proof.  Otherwise, one of its own citations says the
                forfeiture would violate the Due Process Clause of the Fifth
                Amendment. ............................................................................ 3

        B.      The legal standard for unlawful possession of a firearm that the
                plaintiff asserts Mrs. Mann or Kundan Mann to have committed
                requires knowing power to control or dispose of the firearm, which they
                lacked. .................................................................................... 5

III.    Collateral estoppel does not bar Dr. Mann from raising the different
        issues relating to the proceedings against him that were not litigated
        in the underlying criminal action, in part because the averment of
        fraud on the courts pierces the veil of legitimacy normally accorded to
        prior judgments even when the issues previously litigated were not the
        precise ones before the present tribunal. ........................................ 17

Conclusion and Signature ........................................................................... 24

Certificate of Service .................................................................................. 25

# Table of Authorities

## Constitutional Provisions

U.S. Const. amend. II ................................................................................................ 6

U.S. Const. amend. IV (Searches & Seizures Clause) ................................................ 26

U.S. Const. amend. V (Due Process Clause) ............................................................. 4

## Statutes

18 U.S.C. § 924(g) ................................................................................................... 8

18 U.S.C. § 983 ........................................................................................................ 2

26 U.S.C. § 5861(d) ........................................................................................ 1, 8, 9, 11

26 U.S.C. § 5861(e) ................................................................................................. 7

26 U.S.C. § 5872 ...................................................................................................... 8

National Firearms Act, Aug. 16, 1954, ch. 736,Sec 1(d) [Internal Revenue Title, chapter 53], as added Pub. L. 90-618, title II, § 201, Oct. 22, 1968, 82 Stat. 1227 (26 U.S.C. § 5801 et seq.) ..................................................................................... i, 9

## Court Rules

Fed. R. Civ. P. 15(a) ................................................................................................ 1

## Judicial Decisions

*Hill v. West Publishing Co.*, 1998 U.S. Dist. Lexis 23805 (D. Minn. Sept. 24, 1998) 24

*Staples v. United States*, 511 U.S. 600 (1994) .......................................................... 11

*United States v. $129,727.00 U.S. Currency*, 129 F.3d 486 (9th Cir. 1997) ............ 3, 4

*United States v. 47 West 644 Route 38, Maple Park, Ill.*, 962 F.Supp. 1081 (N.D. Ill. 1997) ................................................................................................ 21, 22, 23, 24

*United States v. Barr*, 32 F.3d 1320 (8th Cir. 1994) .................................................. 11

*United States v. Battle*, 774 F.3d 504 (8th Cir. 2014) ............................................... 14

*United States v. Callaway*, 938 F.2d 907 (8th Cir. 1991) ......................................... 7, 8

*United States v. Certain Real Property 566 Hendrickson Blvd., Clawson, Oakland*

*County, Mich.*, 986 F.2d 990 (6th Cir. 1993) ............................................................ 3

*United States v. Cox*, 627 F.3d 1083 (8th Cir. 2010) ........................................ 16, 17

*United States v. Dukes*, 432 F.3d 910 (8th Cir. 2005) ........................................ 9, 10

*United States v. Mann*, 701 F.3d 274 (8th Cir. 2012), *cert. denied*, 134 S.Ct. 470 (2013) ................................................................................................ 11, 12, 13

*United States v. One 1987 Mercedes Benz 300E,* 820 F.Supp. 248 (E.D.Va.1993).... 19

*United States v. Polk,* 574 F.2d 964 (8th Cir.), *cert. denied,* 439 U.S. 849 (1978)....... 7

*United States v. Real Property Identified as Parcel 03179-005R*, 287 F.Supp.2d 45 (D.D.C. 2003) ................................................................................ 18, 19, 20, 21

*United States v. Rembert*, 2016 WL 1298130 (N.D. Iowa April 1, 2016) .................. 14

*United States v. Smith*, 508 F.3d 861 (8th Cir. 2007) ........................................ 14, 15

*United States v. Two Parcels of Real Property Located at 101 North Liberty Street and 105 North Liberty Street*, 80 F.Supp.2d 1298 (M.D. Ala. 2000) .................... 18

*United States v. White*, 816 F.3d 976 (8th Cir. 2016) ................................................ 14

*United States v. Zrust*, 835 F.2d 192 (1987) (per curiam)........................................ 6, 7

## Other Authorities

G. Cukor (dir.), Gaslight (1944)................................................................................ 19

*What constitutes actual or constructive possession of unregistered or otherwise prohibited firearm in violation of 26 U.S.C.A. § 5861,* 133 A.L.R. Fed. 347 (on Westlaw®, last visited Mar. 3, 2016)..................................................................... 5

**Argument**

**I.     Dr. Mann joins in Dr. Pierce's plea of statute of limitations, and will be filing a motion for leave to amend the answer to the plaintiff's latest complaint to incorporate it.**

Dr. Pierce has already filed his trial brief, and has pleaded that under 19 U.S.C. § 1621, the plaintiff had only five years from the date of to file this action after it formed the position that 26 U.S.C. § 5861(d).  Doc. No. 83 at 5.  Dr. Mann denies that Mrs. Mann, Kundan Mann, or anyone else was in unlawful possession of the 93 firearms and firearms components that are the "defendants" in this action. *See* 5-17 *infra*.  But at least as early as April 16, 2009—the date of a letter the plaintiff has tendered to the parties as imputing some sort of guilty knowledge on Mrs. Mann by contacting her attorney—the plaintiff's agents regarded the so-called violation to have begun.  Consequently, its original complaint, Doc. No. 1, filed July 22, 2014, was at least 0.26 years past the five-year limitation period.

Dr. Mann will be filing a motion for leave to amend on even date herewith. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires").

**II.     Whether CAFRA does or does not apply to a non-tax case in which the plaintiff seeks to forfeit a private person's property, the ultimate standard is the preponderance of the evidence, on which the plaintiff cannot established that Mrs. Mann or Kundan Mann was in unlawful possession of the res under the applicable legal standard for unlawful possession.**

Assuming arguendo that this action is exempt from the Civil Asset Forfeiture Reform Act of 2000, Pub. L. 106-185, 114 Stat. 202 (approved Apr. 25, 2000), codified in part at 18 U.S.C. § 983, (CAFRA)'s statement of the preponderance-of-the-evidence standard from the outset of a forfeiture case—when this case had nothing to do with taxes but the title number—it by no means follows that the real standard for depriving a citizen of his or her property forever is the same increasing gossamer one as probable cause for a search.  In order for Mrs. Mann or any member of Dr. Mann's family to have been in unlawful possession of the 93 firearms and firearms components (the res), it would have been necessary that they had the practical power to control and dispose of the res, which the discovery shows they did not.

**A.      The ultimate burden of proof for a forfeiture under 26 U.S.C. § 5872 and 28 U.S.C. § 2461 or any other statute is preponderance of the evidence.  The few, strained citations on which the plaintiff relies for arguing it is a lower standard relate to its burden of going forward, not the burden of proof.  Otherwise, one of its own citations says the forfeiture would violate the Due Process Clause of the Fifth Amendment.**

In opposing any discovery that it realized would bear on its agents' fraud on the courts, the plaintiff cited a Ninth Circuit pre-CAFRA decision, *United States v. $129,727.00 U.S. Currency*, 129 F.3d 486 (9th Cir. 1997), for the unremarkable proposition that after the claimant gives the reasons counting against forfeiture, it gets to reply.  Doc. No. 61 at 3.  It's not clear why the opinion says that, because it doesn't appear that the claimant presented any evidence to rebut.  *Id.* at 488-89 & 492 ("here, the claimant offers no evidence of a non-drug-related source for the currency").  There was no issue of the plaintiff's strangling the claimant's case in the crib by stonewalling on the discovery it considered most damaging because of the public corruption it would have disclosed, which was the issue in limiting Dr. Mann's discovery to avoid the consequences.

One of the decisions the plaintiff relied on in opposing discovery for getting around multiple clauses of the Fifth Amendment is *United States v. Certain Real Property 566 Hendrickson Blvd., Clawson, Oakland County, Mich.*, 986 F.2d 990 (6th Cir. 1993).  As the Sixth Circuit did in *566 Hendrickson Blvd.*, *$129,727's* framing of the question that broadly opens up a forfeiture proceeding to a plea of

fraud on the courts that has explicitly been in these in rem cases since at least August 29, 2014 (Doc. No. 8), and of which the plaintiff has been on notice since May 1, 2013 (No. 4:09-CR-99-BSM Doc. No. 372).  But of course—on the point for which the plaintiff found this Ninth-Circuit decision useful—if the plaintiff can prevent the claimant from developing the facts the claimant believes most important to the equities in the case (and its agents' criminal, civil, and disciplinary liabilities), why should the plaintiff bother replying?

Plaintiff chose to introduce *$129,727* into this case.  One of the issues the claimant raised there was that the statute on which the plaintiff was seeking forfeiture violated the Due Process Clause of the Fifth Amendment by allowing the plaintiff to initiate the action with a showing of probable cause, then casting the burden on claimants to come back with a showing by a preponderance of the evidence.  Plaintiff here cites it for the proposition that at that point, the plaintiff may come back with its own evidence.  What the Ninth Circuit saw as saving the statute is that at that point, the case is decided on a preponderance-of-the-evidence standard.  129 F.3d at 491-92.  In *$129,727*, the claimant came back with no evidence at all.

But that was the issue regarding discovery.  Now the issue is actually depriving Dr. Mann of his proprietary interest in the res, when for the time being he does not claim a possessory interest.

**B.     The legal standard for unlawful possession of a firearm that the plaintiff asserts Mrs. Mann or Kundan Mann to have committed requires knowing power to control or dispose of the firearm, which they lacked.**

To prove unlawful possession under 26 U.S.C. § 5861, the prosecution must go well beyond proximity to the firearm.  Although it need not prove title or ownership, and it may rely on circumstantial evidence, some of the terms that courts have used to reverse convictions or to uphold grants of judgment of acquittal are "knowing" and "knowingly", "power to dispose and assure delivery", "direct, deliberate physical control", "dominion", "power to direct and right to exercise a dominant influence," "actual power", "intention to exercise control", "knowingly has the power and the intention at a given time to exercise dominion and control over an object", "knowledge of presence plus control", "power and intent to exercise control", "assume dominion", "engineer", and "effectively".  Another theme is that the overt acts alleged are likely to involve some transaction.  *What constitutes actual or constructive possession of unregistered or otherwise prohibited firearm in violation of 26 U.S.C.A. § 5861,* 133 A.L.R. Fed. 347 (on Westlaw®, last visited Mar. 3, 2016).

There is no way that Mrs. Mann (let alone Kundan) could seriously be said to meet the standards the cases set forth.  She did not have a right to divest Dr. Mann of the collection, which he expected to return to after his acquittal.

- 5 -

That is not simply a matter of his ongoing property interest in the collection: if she **had** tried to get it out of the house, the plaintiff would have charged her with an additional 93 felony counts.  Practical power is one of the tests in the cases construing the statute for purposes of defining the concrete acts required to be guilty of violating it.  The fact that one could in theory take up a Presidential candidates suggestion and carry a firearm to a Presidential election rally to "go Second Amendment" does not mean one has the effective power to do it.  Because the test is practical, not theoretical, one would need to factor in the high likelihood that activists or security guards would stop one even if one could get off a clean shot.  In addition, it would be first-degree murder as a matter of ordinary law and a federal offense since the target is running for federal office.  It is not simply a question of property rights (as ownership would be as to Dr. Mann's collection), but the fact that one would face life without parole or possibly the death penalty for doing it.  On the more prosaic level of this case, when Mrs. Mann was in trouble as it was, the deterrent effect for violating the federal firearms laws left her without the effective power to dispose of the collection.

A phrase that stands out in the collection of judicial tests is "***knowledge of presence plus control***."  Neither Mrs. Mann nor Kundan had control over the "defendants" in No. 4:14-CV-423.  Just one decision using this language is *United States v. Zrust*, 835 F.2d 192, 193 (1987) (per curiam).  Mr. Zrust actually sold the sawed-off shotgun to undercover agents.

*Zrust* is a decision that found evidence sufficient to submit the count to the jury.  In the instruction doing so, the judge required the jury to find that the accused "knowingly ha[d] direct control over [the firearm]."

Although the appellate decision affirming the conviction on these red-handed facts appears to suggest that storage of a firearm in one's home would count as possession, the place where the suggestion appears cites as the authority for it *United States v. Polk,* 574 F.2d 964, 965 (8th Cir.), *cert. denied,* 439 U.S. 849 (1978). That statement is not necessary to the resolution of the issue before the *Zrust* court. Nor does looking up *Polk* even bear out *Zrust*'s characterization of it:  at the place cited, it says "the shotgun was found in the defendant's closet and the defendant had ***admittedly exercised control over the gun*** in placing it there[]" (emphasis added).  The closet was in the accused's own bedroom, not a hived-off section of a sprawling residence that was a separate room for a separate purpose other than having shelter from the elements, such as entertaining guests or relatives.  *Polk*'s facts limit its rule of law to situations in which the physical presence of someone else's chattels on real estate in which one resides involves some kind of mens rea which was lacking in light of Dr. and Mrs. Mann's discovery responses and the information.

Title 26 U.S.C. § 5861 contains a separate subsection, (e), for unlawful transfers.  In *United States v. Callaway*, 938 F.2d 907, 908-09 (8th Cir. 1991), the Eighth Circuit explains that the prohibition of subsection (e) is not directed to the more common situation in which one individual simply gives, sells, etc. a firearm to another individual, and the law wishes to retard this because (within limits of

- 7 -

political reality) the law considers the proliferation of firearms a social ill.  That kind of "transfer" as we use the term in ordinary language is not what subsection (e) criminalizes; but again within the limits of political reality, it comes under a straight criminal statute, 18 U.S.C. § 924(g).  *Callaway* upheld a conviction under ***that*** statute despite the fact that Callaway had only momentarily possessed the sawed-off shotgun which he paid $15 for and then passed off to the person whom he expected to use it in robbing a crap game.

On the facts in *Callaway* or the words of 924(g), there would be no way Mrs. Mann or Kundan would be criminally liable for living in the house when the 93 firearms and firearms components were locked away in safes waiting for Dr. Mann's acquittal or subsequent vindication, and Mrs. Mann's permission (and sole interest) in entering or leaving the room or a single safe was to retrieve and return jewelry and sensitive family papers that were in Safe No. 2.

In seeking a protective order to avoid discovery into anything that the plaintiff recognized as supporting Dr. Mann's averments of fraud on the courts tincturing his convictions and sentences, the plaintiff pleaded that the so-called offense by Mrs. Mann was so plain that no discovery into how it got the firearms and firearm components in the first place would be useful.   Doc. No. 61 at 1-2 & 3-4.  In that pleading, the plaintiff tried to make it appear that Mrs. Mann was guilty of possession of firearms and firearm components that the National Firearms Act requires to be registered, when they were registered to Dr. Mann, and not to her, all (it says) in violation of 26 U.S.C. § 5861(d).  Relying on 26 U.S.C. § 5872, it argues that this "possession" renders the firearms and components liable to forfeiture.  Its

point was that her criminal liability and the "defendants'" forfeitability are so open-and-shut that discovery into how its agents created the situation is beside the point.

Plaintiff admitted that in order for Mrs. Mann to be guilty under section 5861(d), she must have had each and all of the "defendants" in her possession, and must have known "the characteristics of the weapons that made them subject to the NFA", *i.e.*, the National Firearms Act.[1]  Doc. No. 61 at 3.  It claimed that her discovery responses and Dr. Mann's in this action supply the evidence it needs to make its case for forfeiture of Dr. Mann's property, so Dr. Mann was not entitled to conduct discovery to make his case against it.  *Id*. at 3-4.

In doing so, it cited *United States v. Dukes*, 432 F.3d 910 (8th Cir. 2005).  But *Dukes* did not involve averments of fraud on the court that undermine the legitimacy of the government action to initiate the case.  It did not involve the spouse of a licensed firearms dealer and collector with an ongoing relationship with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) that went back for years. It did not involve the licensee's involuntary absence from the site where he had stored and maintained a collection of exotic weaponry for sale and other noncriminal uses.

Far from being uninvolved and uninterested in the regulated articles—as the discovery shows Mrs. Mann was, and the plaintiff can only include precatory

---

[1]National Firearms Act, Aug. 16, 1954, ch. 736,Sec 1(d) [Internal Revenue Title, chapter 53], as added Pub. L. 90-618, title II, § 201, Oct. 22, 1968, 82 Stat. 1227 (26 U.S.C. § 5801 et seq.).

statements disputing—Mr. Dukes's live-in girlfriend called the police after the early searches to say that she and Mr. Dukes had their "asses covered" because there were ***more*** silencers at their meth lab, as well as some at Mr. Dukes's workplace. *Id.* at 913.  And the space in which the police found the silencers was, in fact, a meth lab where there were multiple firearms that someone involved in the illegal drug trade could readily use in a shootout with competitors, creditors, armed persons under the influence, law enforcement, or the public generally.  *Id.* at 912 & 914-15.

The jury found that Mr. Dukes was guilty of the meth offenses.  *Id.* at 915.  It also found that he had the requisite scienter of the illegal nature of the silencers even if one assumed they were "non-quasi-suspect", as if a lawful hunter would use a silencer to get $Bambi_2$ with a semiautomatic rifle immediately after getting $Bambi_1$ (assuming $Bambi_2$ was far enough away from $Bambi_1$ or otherwise unable to see or hear her go down).  *Id.* at 916.  When one discounts the ginned-up allegations that Newman and his confederates attempted to foist on the Arkansas State Medical Board without success, the issues about Dr. Mann's judgment in prescribing painkillers is not simply in a different league from the jury findings in *Dukes*, but in a different professional sport (making mistakes like the rest of us).

Dr. Mann's own knowledge of the characteristics of the 93 "defendants" is not an issue here, nor is his possession of them.  He had possession of them until the plaintiff's agents arrested him and removed him from the family home, in which he kept them in gun safes.  His safe-keeping of these items was not the subject of any criminal charge (let alone conviction), nor is his possession of them from the

plaintiff's custody an issue here.  Instead, the plaintiff contends that Mrs. Mann was "guilty" of violating subsection 5861(d) by living in her own home until its agents arrested *her*.

In the same context, the plaintiff cited *United States v. Barr*, 32 F.3d 1320 (8th Cir. 1994).  It involved an unregistered sawed-off shotgun, when the Supreme Court had said in *Staples v. United States*, 511 U.S. 600 (1994), that sawed-off shotguns are in the "quasi-suspect" category of firearms concerning which it did not require that the prosecution show the possessor knew of the characteristics requiring registration in order to be criminally liable.  32 F.3d at 1323, quoting 511 U.S. at 611-12.  After its years of possessing the firearms themselves, taking pictures of them, and having the full weight of the federal government to dissect them, the plaintiff has not come up with any item among the 93 that was so obviously illegal to possess without registering it that a person without special knowledge and consultation with regulators and fellow licensees would have presumed to be illegal on its face.

Because there is no good-faith argument that Mrs. Mann was in actual possession of the 93 "defendants", the plaintiff argued that she was in constructive possession of them.  She was, after all, living in her own home, which she had shared with Dr. Mann until the plaintiff arrested and jailed him, and continued to live there until it arrested and jailed her—and removed the "defendants" in this action.  It cites the direct-appeal finding sufficient evidence that Dr. Mann had been in possession of grenades in an ammunition canister off his property when the allegation was a product of the fraud on the courts at issue here, as well as two

- 11 -

other cases.  None of them would bear the weight of convicting Mrs. Mann of possession of unregistered firearms.  None will bear the weight of extinguishing her marital interest in the res, Dr. Pierce's expectancy of a judgment creditor's interest in the res, or Dr. Mann's possessory interest in them as qualified by Mrs. Mann's marital interest and by any award applying the remainder of the value of the res to a judgment in favor or Dr. Pierce.

Citing the Eighth Circuit direct-appeal that depends on the same fraud on the courts for its information about the ammunition canister within 1000 feet of the Manns' property, *United States v. Mann*, 701 F.3d 274 (8th Cir. 2012), *cert. denied*, 134 S.Ct. 470 (2013), the plaintiff attempted to bootstrap its stonewalling onto the earlier misconduct.  Leaving that aside, and viewing the Eighth Circuit's opinion as authority in a common-law system rather than still more evidence of fraud on the courts, the "facts" in the opinion bear no resemblance to a lady's living in her own home and not attempting to make an unlawful transfer of someone else's property that is in four locked gun safes in the basement, when their owner and the only person licensed to dispose of them has been put in jail by the same people who now want to take title to them.  The legal standard that the Eighth Circuit provided was that it would find sufficient evidence of constructive possession to affirm the jury finding if it heard evidence of "'"ownership, dominion or control"' over the firearm", also saying that it depends on "'knowledge of [a firearm's] presence, combined with control is constructive possession.'"  *Id.* at 304-05 (citations omitted).  ***Control*** is an essential element of unlawful possession.

For purely heuristic purposes, the "facts" in the direct-appeal opinion were that the 98 M406 high-explosive grenades had been "found" by city workers about 900 feet from the Manns' home; that "two witnesses" said they appeared to have been freshly buried; that they were in an ammunition canister matching several in Dr. Mann's home, one of which had the same lot number; that he had practice grenades, launchers, and manuals that would have related to the high-explosive grenades; that Lloyd Hahn testified he had sold Dr. Mann first some practice grenades and later about 100 high-explosive grenades; that Hahn had removed the serial numbers and wiped the grenades for fingerprints; and that the searchers found them to lack serial numbers and fingerprints. *Id.* at 305.

As the Court knows well, Dr. Mann hotly contests the picture one gets from reading the direct-appeal opinion, believing that the Eighth Circuit—like this Court, the Solicitor General's Office, the Supreme Court, and of course himself—is a victim of fraud.  But when evaluating the direct-appeal opinion as legal authority for a statement in the plaintiff's brief in support, it is the foregoing legal fiction—not the truth—that matters.  There is simply no way to get from the foregoing picture to the case of a homeowner with neither permission nor right nor desire nor hope of doing so without landing in jail to handle, sell, give away, or otherwise mess with someone else's property which is locked in safes to which one has limited permission to enter (to access other contents of one out of four).

According to WestLaw®, no other court has cited this decision as an authority for constructive possession based on ownership of a home and possession of theoretical access to a heavily-regulated chattel that one has neither the owner's

permission to handle nor a required license to transfer nor any demonstrated attraction toward, which is locked in a safe to which one had limited permission to open to access other items.[2]  Of course.  That is not what the "facts" were in the published direct-appeal opinion.  That is not what the police-prosecution team told the Eighth Circuit had happened.  Naturally they did not tell any court about what this Court now has scientific evidence ***did not*** happen.

In the second case, *United States v. Smith*, 508 F.3d 861 (8th Cir. 2007), a game warden caught three brothers in a car in a rural area out of deer season.  He had seen the car enter the area, and heard some small-caliber shots ring out.  He stopped the brothers, and one of them admitted that he had fired a .22 semiautomatic rifle at a deer.  The warden removed the rifle from the front seat of the car, and radioed for backup.  Although the brothers told him they had no other weapons, he proceeded to search the car, and found a 9-mm. submachine gun and a loaded magazine for it on the floorboard on the driver's side, hidden beneath some clothing.  When some deputy sheriffs arrived, they searched the car systematically,

---

[2]The two of the the three decisions or orders that cite the direct-appeal opinion on constructive possession of a firearm repeat the word "control" as part of the test from *Mann* itself, and none of the three involve a situation as passive as Mrs. Mann's.  *United States v. Battle*, 774 F.3d 504, 511 (8th Cir. 2014); *United States v. Rembert*, 2016 WL 1298130, at *3 (N.D. Iowa April 1, 2016) (Reade, C.J.); And the third cites *Battle* as including "control" in the test, and *Mann* in the same paragraph.  *United States v. White*, 816 F.3d 976, 985 (8th Cir. 2016).  So Mann is in fact reflected as a source of the word "control" either directly or by *Battle*'s citation of it.

having each brother get out of the car in turn.  Appellant was sitting in the front passenger seat.  There, they found a spent 9-mm. casing on the floor and some live 9-mm. ammunition in an armrest.  Subsequent investigation and trial evidence showed that the three had purchased the submachine gun together a month before their poaching trip, and that the appellant had been the one who test-fired it before one of the three paid for it.

On these facts, the Eighth Circuit found that there was sufficient evidence from which the jury could reasonably have found that the appellant had sufficient knowledge and control to put him in possession of the submachinegun.  Before getting into all of the facts, it does recite the very broad language for which the plaintiff cites it here.  *Id.* at 866.  But that language is obiter dictum.  The facts there are worlds apart from living in one's own house when there happen to be firearms lawfully registered to one's spouse in four gun safes, when one does not have either the spouse's permission or the legal right or any reason to handle them, let alone dispose of them.

In *Smith*, the appellant had the submachinegun's ammunition—spent and live—in his immediate wingspan, and the floorboard behind the driver would have been within his reach (with his left hand) in the bulk of vehicles produced by the time of the case.  The actual decision did not turn on ownership of the car, possession of a set of keys to the car or the garage, or other showing that someone might have had access to the car at some other time:  there is no indication that the driver was even charged, nor the person who owned the real estate where the car was garaged.  Because the appellant was not the driver, and there was no evidence

- 15 -

that he had some Manson-like lock on his two brothers' behavior, the decision did not turn on control of the car as opposed to the submachine gun, the magazine, and the ammunition for it. The sheer dictum for which the plaintiff cited *Smith* does it no good here.

Finally, the plaintiff cites *United States v. Cox*, 627 F.3d 1083 (8th Cir. 2010). Once again, the opinion contains text overlapping with what the plaintiff copies from it. *Id.* at 1085. But on the facts and the remainder of the reasoning of the opinion in the case, the language either doesn't even rise to the level of obiter dictum or is the weakest sort of dictum. The Court found actual possession of the loaded firearm the police found on the appellant when he was a convicted felon. *Id.* at 1085. Whether he ***also*** had constructive possession of it was either totally irrelevant to the case or absolutely unnecessary to the result.

Even if it weren't, any "constructive" element of this appellant's possession of the firearm was so close to actual possession that the decision would never support application of it to living in one's home as opposed to under an Interstate overpass. Police found a semiautomatic pistol in a gun case on the floorboard of a vehicle in which the appellant had been a passenger in a high-speed attempt to flee from them, which resulted in a multi-vehicle accident. A prosecution witness put the gun, in the gun case but partially exposed, in the appellant's hand immediately after the chase, and testified that the appellant closed the case and put it under his seat, *i.e.*, on the floorboard as the police themselves testified they found it; the same witness testified that he was subsequently jailed with the appellant on an unrelated

charge, and the appellant warned him not to testify to what he had seen.  *Id.* at 1085.  Appellant's possession of the firearm was as actual as it gets.

In addition to the nonexistent relationship to the facts in this case, *Cox* contains a public-service announcement for which the plaintiff doesn't cite it:  the testimony against the appellant included jailhouse testimony from Steven Briscoe, whom the plaintiff or its agents put in the same cell with the appellant as a predicate for his testimony that the appellant had confessed and said he was trying to think of a lie to beat the charges against him.  *Id.*  Plaintiff used the same serial snitch against Dr. Mann.  No. 4:09-CR-99-BSM (TT:2356-2447).  Trial counsel crossexamined Briscoe about his testimony against Cox, and the plaintiff continued to sponsor Briscoe despite the lengths to which we went to make a deal on his own situation at the expense of Cox.  In Cox's case, the Eighth Circuit's resolution of the case did not depend on Briscoe's predictable consideration flowing to the plaintiff.

**III.   Collateral estoppel does not bar Dr. Mann from raising the different issues relating to the proceedings against him that were not litigated in the underlying criminal action, in part because the averment of fraud on the courts pierces the veil of legitimacy normally accorded to prior judgments even when the issues previously litigated were not the precise ones before the present tribunal.**

Toward the end of the brief in support of the motion to avoid discovery on the fraud-on-the-courts issue, the plaintiff cites two out-of-circuit district-court orders for the proposition that he cannot raise any issue relating to the circumstances

- 17 -

under which it removed him from his home and rendered him unable to dispose of the 93 "defendants" lawfully.  Doc. No. 61 at 5.

The plaintiff does not say *what* collaterally estops Dr. Mann from maintaining his plea of fraud on the courts.  Was it the trial, where the police-prosecution team hid what they were doing from trial counsel, and trial counsel did not pursue the evidence of it developed in post-conviction relief?  Was it the post-conviction relief action, which is still active in this Court?  Or can one estop a factually-based, legally-sound argument in its tracks just by saying "I was in Joysey" if one happens to be an agent of the plaintiff?

In support of an argument of the form the plaintiff can't make, the plaintiff cites *United States v. Real Property Identified as Parcel 03179-005R*, 287 F.Supp.2d 45 (D.D.C. 2003), and *United States v. Two Parcels of Real Property Located at 101 North Liberty Street and 105 North Liberty Street*, 80 F.Supp.2d 1298 (M.D. Ala. 2000), as supporting its recycling of jury findings on one issue as "collateral estoppel" in the litigation of another.

At the place cited, the order in *Parcel 03179-005R* rejects the claimant's position in the forfeiture proceeding that his signatures of his mother's name on court papers giving him control over family funds and other assets were not forgeries because District of Columbia probate law allowed him to make them—a question of law rather than fact.  *Id.* at 63.  In the forfeiture proceeding, the district judge found the argument "unconvincing", and also found it "noteworthy that [the claimant] continued to sign his mother's name even after she died, and failed to notify the Superior Court about her death, facts that added to the government's

proof that he sought to defraud the estate's heirs and the Superior Court."  At the same place, the forfeiture order contains language overlapping with, but more limited than, the conclusion the plaintiff ascribes to it.  Quoting a Virginia federal district court order, *Parcel 03179-005R* says:

> based on the claimant's conviction for extorting money, "[t]he doctrine of issue preclusion or collateral estoppel bar[red] [the claimant's] attempt to relitigate in this civil proceeding an issue of fact fully litigated in a prior criminal proceeding and necessary and essential to the judgment of conviction entered in the criminal matter." [Id., quoting *United States v. One 1987 Mercedes Benz 300E,* 820 F.Supp. 248, 253 (E.D.Va.1993).]

Whereas the judge and jury in the foregoing claimant's criminal trial had before it the same legal excuse he presented in the forfeiture action, Dr. Mann could obviously not present the issues he has pleaded in this Court before it or the jury in his trial in No. 4:09-CR-99-BSM.  The averments and evidence in Grounds 1, 20, and 2 of No. 4:14-CV-614-BSM that apply to the civil-forfeiture actions as well ***delegitimize*** the actions by which the plaintiff removed him from his home and put Mrs. Mann in a legally-impossible situation in which whatever she did, the plaintiff's agents would seek to hold her criminally liable (or at least lock her away, as in GASLIGHT, to make it easier wrongfully to take the res).

The jury in No. 4:09-CR-99-BSM did not have before it the allegations of fraud on the courts that were presented in No. 4:14-CV-614 and are still pending, let alone the ones before the Court in these civil forfeiture proceedings.  Although Dr. Mann has presented a variety of grounds for relief in his section 2255 motion, his special presentation of one cluster of the grievances does not allege ordinary

garden-variety constitutional violations:  it alleges acts and omissions by government agents and their confederates which impeach the reliability of the picture the plaintiff presented to this Court and the jury in such a fundamental manner as to strip from the result at trial and on direct appeal and certiorari any finality that would ordinarily attach to the judgment or even the initiating searches and his arrest.

More to the point, *Parcel 03179-005R* did not involve an issue of fraud on the court by the plaintiff—albeit in the criminal proceeding underlying the forfeiture action—which bears on this one independently, by enabling the ersatz "offense" by Mrs. Mann that the plaintiff alleges by removing Dr. Mann from the home and leaving Mrs. Mann with neither a legal right nor a lawful means of disposing of the firearms and components.  To apply collateral estoppel even if the facts fell within the strict wording of *1987 Mercedes Benz* when the averments pierce the veil of legitimacy of what the jury did not hear, and why, would be inconsistent with the Due Process Clause of the Fifth Amendment.

In the happily named second case, the plaintiff cites a footnote making the point that in the forfeiture proceeding itself, the claimant did not deny that she had committed a drug offense, or that she committed it on the property that the plaintiff sought to forfeit:  much as in *Parcel 03179-005R* , in *United States v. Liberty Street* the dispute was not about the facts, but about the ***legal consequences*** of the facts. 80 F.Supp.2d at 1308 n.29.  It says that the claimant could not challenge the finding of guilt in any event because she had pled guilty.  *Id.* n.29.  But it had rejected her defense to the plaintiff's complaint without relying on the plea of guilty:  she had in

effect renewed her agreement that she had committed the drug offense on the res anew, and it did not need to reach the issue on which the plaintiff here cites it.  The citation is obiter dictum.

More to the point, as in *Parcel 03179-005R*, the claimant did not assert a fraud on the courts that impeached the legitimacy of the entire process by which the plaintiff was seeking the forfeiture—only the legal consequences of what she averred in an affidavit in the forfeiture proceeding itself.

Plaintiff makes the same argument and gives the same citation—*United States v. 47 West 644 Route 38, Maple Park, Ill.*, 962 F.Supp. 1081 (N.D. Ill. 1997), for *$639,558*—as it did to avoid discovery of whatever it saw as implicating its agents' fraud on the courts to the effect that the only thing Dr. Mann could possibly be asserting is that evidence should have been suppressed, and that does him no good in opposing the forfeiture of a res concerning which the jury found against the plaintiff on an issue on which he bore the burden of proof by a preponderance of the evidence, and concerning which he has timely pleaded and well-developed grievances of fraud on the courts that undermines the entire set of claims against him, from the first search forward.  Doc. No. 61 at 5.

But *47 West 644* was a federal forfeiture action under 21 U.S.C. §§ 881(a)(6) & (7)—a completely separate statute than this case involves.  Although the plaintiff there pleaded that the res was somehow tied to growing marijuana (which was an offense the federal government prosecuted that long ago), the sovereign which in fact prosecuted the claimants who were parties to the order was the State of Illinois, not the federal government.  A state officer did not act as shill for a federal taker in

swearing to a falsehood to kick off a federal case. The federal forfeiture action was collateral to the state criminal case in a way that this one—despite the forms—is not. The *47 West 644* claimants did not assert the flagrant official misconduct which the federal district court ruled that a reasonable factfinder could have found in the case (*id.* at 1090) to have been committed by an agent or agents of the plaintiff, such that the forfeiture would allow the plaintiff to profit from its own wrong. *47 West 644* the dispositive order on summary judgment conducted **after** discovery, and the court's order **relied** on the fruits of discovery. *E.g.*, *id.* at 1085, 1086 & 1089-91.

Because the order was on a motion for summary judgment, it did not actually resolve the question whether there had been a Fourth-Amendment violation. To the extent that it resolved the question even in part, it did so by saying that a reasonable factfinder **could** find that the actual entry on September 15 was an unreasonable search and seizure. It noted that although it was not according the state appellate court decision collateral estoppel effect in the federal forfeiture action, the Illinois Appellate Court, 2d Dist., had remanded the case to the state trial court for a finding on whether the search and seizure on September 15 were unconstitutional. *Id.* at 1088.

In explaining how the case arose, it described the fruits of the September 13 flyover which would appear to have been adequate to establish probable cause for purposes of obtaining a search warrant, *id.* at 1084, opining that it was "well settled" that the latter had not violated the claimants' privacy. *Id.* at 1087. The

problem was that with the pre-seizure pictures and the right to have taken them, the police did not obtain a search warrant.

In addition to the radical differences between *47 West 644* and this case, whatever it may have to say that would help the plaintiff here is of at best persuasive rather than mandatory authority.  As a matter of jurisprudence on this criterion, *47 West 644* is from another district court not even in the same circuit.  It has only been cited three times.

Plaintiff relies on *47 West 644* for the proposition that the exclusionary rule's qualified prohibition of the introduction into **evidence in the prosecution's case-in-chief** of the fruits Fourth Amendment is so far from a defense against its claims that the Court is not entitled to receive evidence of a fraud on itself and on several sister courts, state and federal.  Doc. No. 61 at 5.  In order for *47 West 644* to have any even grammatical relationship to this case, Dr. Mann would have to be making the claim that the evidence of his possession of the items the plaintiff seized and now wants to destroy, sell, or get a title loan against in No. 4:14-CV-423-BSM should be **suppressed** as evidence, when he has necessarily averred his ownership of the items, and the plaintiffs' wrongful possession of them, as elements of his defense against the plaintiff's present claims.  His discovery responses have in fact improved the documentation over the error-ridden listing in Exhibit 1 to the gaggle of complaints the plaintiff has foisted on the Court and the parties.  It understates the non-relationship between *47 West 644* and this case to say they are apples and oranges: they are more like a fish and a bicycle.

Rather than *47 West 644*, *Hill v. West Publishing Co.*, 1998 U.S. Dist. Lexis 23805 (D. Minn. Sept. 24, 1998), provides an apposite precedent for this juncture of these cases.  In it, the defendant's discovery showed that the plaintiff had instigated the entire action with acts of fraud or other conduct bearing badges of fraud.  They were different from ones Dr. Mann has averred and presented expert evidence in support of in No. 4:14-CV-614-BSM (lodged per local practice under No. 4:09-CR-99-BSM for e-filing purposes).  But the differences were descriptive and have no bearing on the applicability of the precedent.  The fact that the plaintiff in *Hill* was a private individual rather than the sovereign bound by the Fourth and Fifth Amendments makes the circumstances of this case ***more*** compelling, and the violation of Dr. Mann's and his family's rights more egregious.

## Conclusion and Signature

WHEREFORE, claimant Dr. Mann renews his prayer for the Court's order denying the plaintiff's latest amended complaint, and for other relief as law, equity, and justice indicate.

Respectfully submitted,

/s/John William Simon
JOHN WILLIAM SIMON # 34535
Constitutional Advocacy, LLC
7201 Delmar Blvd., Suite 201
St. Louis, Missouri  63130-4106

(314) 604-6982
Fax  (314) 754-9083
*simonjw1@yahoo.com*

*Attorney for Claimant Dr. Mann*

- 24 -

## Certificate of Service

I hereby certify on this seventeenth day of August 2016, a true and correct copy of the foregoing was served on counsel of record for the plaintiff in the above-captioned civil action.

/s/John William Simon # 34535
Attorney for Claimant Dr. Mann