**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**UNITED STATES OF AMERICA**                                                 **PLAINTIFF**

**v.**                                 **CASE NO. 4:14CV00423 BSM**

**ONE ASSORTMENT OF 93 NFA**                                    **DEFENDANTS**
**-REGULATED WEAPONS**

**RANDEEP MANN**
**SANGEETA MANN**
**TRENT PIERCE**                                                                 **CLAIMANTS**

<u>**ORDER**</u>

The verified claims of Dr. Randeep Mann ("Dr. Mann") and his wife, Sangeeta Mann

("Mrs. Mann"), [Doc. Nos. 3, 6] are denied.  Dr. Trent Pierce's ("Dr. Pierce") verified claim

[Doc. No. 7] is granted.  The 93 NFA-regulated weapons seized by the government are

ordered to be sold at auction. The government and Dr. Pierce are ordered to propose a special

master to coordinate the sale of the firearms. The special master will be paid expenses and

a market-based fee from the proceeds of the sale.  The remaining proceeds of the sale shall

be paid to Dr. Pierce.  Upon the disposition of all proceeds, the special master will provide

an accounting.

I.  BACKGROUND

This case involves 93 NFA-regulated weapons ("defendant firearms") owned by Dr.

Mann. Dr. Mann is currently serving a life sentence in federal prison for felony offenses

stemming from a grenade explosion that severely injured Dr. Pierce, including the unlawful

possession of NFA firearms other than the defendant firearms.  Prior to his conviction, Dr. Mann was an avid firearms collector with a Class III federal firearms license.  All of the defendant firearms were lawfully acquired during his marriage to Mrs. Mann, were purchased with marital funds, and were properly registered to Dr. Mann or his business, Exotic Weaponry.  Due to the nature of the defendant firearms, only class III federal firearms licensees can possess them.  26 U.S.C. § 5861.

In February 2009, Dr. Pierce was the target of an explosion by an MK3A2 grenade. As a result of this explosion, Dr. Pierce was rendered severely and permanently injured. Because Dr. Pierce was the Chairman of the Arkansas State Medical Board, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") investigated doctors who had been disciplined by the Medical Board for potential suspects.  Dr. Mann was investigated because he had been the subject of several disciplinary actions by the Medical Board.  As part of the investigation, ATF agents interviewed Dr. Mann and Mrs. Mann.  During the interview, the ATF agents learned that Dr. Mann was an avid firearms collector.

Some time later, a canister of grenades was found buried near the Manns' home.  The state of Arkansas then executed a search warrant on the Manns' home in March 2009.  Dr. Mann was then arrested for possessing unregistered NFA-regulated grenades. Dr. Mann was eventually charged with a number of federal offenses, including unlawful possession of NFA-regulated firearms and use of a weapon of mass destruction.

While Dr. Mann was detained pending trial, the defendant firearms were stored in gun

safes at his residence. Mrs. Mann occupied the home during Dr. Mann's detention and had access to the keys to the gun room and the codes to the gun safes. During Dr. Mann's detention, he and Mrs. Mann discussed the sale of the defendant firearms. Also, on at least one occasion, Mrs. Mann accessed one of the gun safes to retrieve jewelry and family papers. Nothing in the record indicates that Mrs. Mann improperly used or handled any of the defendant firearms at any time.

In an April 16, 2009, letter, Jane Duke, United States Attorney for the Eastern District of Arkansas, advised Mrs. Mann's lawyer, Cathleen Compton, that Mrs. Mann and her son, Kundan Mann, may be in unlawful possession of the defendant firearms. Compton sent the letter to Mrs. Mann. The letter gave Mrs. Mann and Kundan until May 18, 2009, to transfer the defendant firearms to a Class III federal firearms licensee. Although Compton and Mrs. Mann do not recall the specifics of their conversations, they agree that Mrs. Mann relied on Compton to handle all of the relevant matters with the government.

Compton, along with the lawyers for Kundan and Dr. Mann, engaged in discussions with the government regarding the removal of the defendant firearms. In a series of emails between Compton and the government, the transfer deadline was extended to July 2, 2009. Compton and others representing the Manns' interests unsuccessfully attempted to find a Class III licensee willing to take possession of the defendant firearms. Consequently, Mrs. Mann did not transfer the defendant firearms by the July 2, 2009, deadline.

On August 5, 2009, the government obtained a warrant to seize the defendant firearms

as evidence in Dr. Mann's criminal case. The warrant was executed on August 8, 2009. The officers executing the warrant found Duke's April 16 letter to Compton. Mrs. Mann opened one of the gun safes for the officers and provided the combinations to the others. The defendant firearms were then taken for the purpose of securing evidence for Dr. Mann's criminal case. This, however, disrupted the attempted lawful transfer of the defendant firearms. Although the defendant firearms were not used by Dr. Mann to perpetrate the crimes at issue in his criminal case, the government has maintained possession of them and is now pursuing this civil forfeiture action.

Mrs. Mann was later charged with conspiring to obstruct an official proceeding, aiding and abetting tampering of evidence, and making a false declaration to a grand jury. These charges were unrelated to the possession of the defendant firearms. She was convicted of conspiring to obstruct an official proceeding and aiding and abetting tampering of evidence. Dr. Mann was convicted of using a weapon of mass destruction, using an explosive resulting in personal injury, possessing unregistered firearms, possessing a machine gun, conspiring to obstruct an official proceeding, and aiding and abetting tampering of evidence.

On March 23, 2015, Dr. Pierce obtained a judgment against Dr. Mann in the amount of $122,500,000. *See Trent P. Pierce and Melissa Pierce v. Randeep Mann*, Circuit Court of Crittenden County, Arkansas, No. CV-2010-61. This judgment was based on the injuries Dr. Pierce sustained as a result of the explosion that formed the basis of Dr. Mann's prosecution. Dr. Pierce's injuries, however, were not the result of Mrs. Mann's actions. In

fact, nothing presented during the course of the trial indicated that Mrs. Mann had any knowledge, prior to Dr. Mann's arrest, that he had engaged in the actions that caused Dr. Pierce's injuries.

Dr. Pierce's judgment against Dr. Mann was recorded in Pulaski County, Arkansas in the Official Records of Larry Crane, Pulaski County Circuit/County Clerk.  On March 9, 2016, a Writ of Execution on the judgment was issued to seize the defendant firearms.  The writ was served on Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF Evidence Vault Custodian, 425 W. Capitol Avenue, Suite 775, Little Rock, Arkansas 72201, but it was returned unexecuted because the defendant firearms were not present.  Unable to seize the defendant firearms, Dr. Pierce's judgment remains unsatisfied.

The government initiated this civil forfeiture action on July 22, 2014, alleging the defendant firearms are subject to forfeiture under 26 U.S.C. § 5872 and 28 U.S.C. § 2461 because they were unlawfully possessed in violation of 26 U.S.C. § 5861(d).  *See* Doc. No. 2.  Dr. Mann, Mrs. Mann, and Dr. Pierce all claim the firearms.  The government and the claimants have stipulated as to the facts and seek an order disposing of the defendant firearms.  *See* Doc. Nos. 78, 80, 83, 87, 99.

## II.  BURDEN OF PROOF

In a civil forfeiture action, the government must first establish probable cause that the property was used in violation of the law.  19 U.S.C. § 1615; *United States v. One 1982 Chevrolet Corvette Two-Door Auto.,VIN IG1AY878YC5117138*, 976 F.2d 392, 392 (8th Cir.

1992).  Once the government establishes probable cause, the burden shifts to the claimant to prove by a preponderance of the evidence that the property was not related to the violation of federal law.  19 U.S.C. § 1615; *One 1982 Chevrolet Corvette Two-Door Auto.*, 976 F.2d at 392.  If the claimant offers such evidence, the government may offer "probative admissible evidence to contest the claimant's proof."  *United States v. $129, 727.00 U.S. Currency*, 129 F.3d 486, 492 (9th Cir. 1997).

## III. DISCUSSION

A.   Forfeiture

The government has met its initial burden of establishing probable cause that the defendant firearms were used in violation of the law.  The government alleges that Mrs. Mann was in unlawful possession of the defendant firearms once Dr. Mann was taken into custody.  The government argues this because Dr. Mann, and not Mrs. Mann, possessed the Class III federal firearms licence necessary to possess the defendant firearms.  Consequently, the government essentially argues that the mere presence of the defendant firearms in the Manns' home became unlawful once Dr. Mann was arrested and removed from the home.  This is true although Mann was presumed innocent at the time he was removed from the home.

It is "unlawful for any person to receive or possess a firearm . . . not registered to him in the National Firearms Registration and Transfer Record."  26 U.S.C. § 5861(d).  Any firearm possessed in violation of 26 U.S.C. § 5861(d) is subject to forfeiture.  *Id.* § 5872(a).

6

To meet its initial burden of establishing probable cause that the defendant firearms are being used in violation of the law, the following elements must be shown: (1) Mrs. Mann was aware that she possessed the firearms; (2) Mrs. Mann knew the firearms were regulated by the NFA; (3) the firearms were capable of operating as designed or could readily be put in operating condition; and (4) the firearms were not registered to Mrs. Mann in the National Firearms Registration and Transfer Record. *See United States v. Dukes*, 432 F.3d 910, 915 (8th Cir. 2006).

The government has shown that there was probable cause that the firearms were subject to forfeiture. The government has satisfied the first element because Mrs. Mann knew that the firearms remained in the home after Dr. Mann was taken into custody. The government has satisfied the second, third, and fourth elements by showing that U.S. Attorney Jane Duke's letter informed Mrs. Mann that she was in unlawful possession of the weapons and that the letter explained why the possession of the weapons was unlawful.

The burden now shifts to the claimants to prove by a preponderance of the evidence that the defendant firearms were not related to the violation of federal law. *See* 19 U.S.C. § 1615. Dr. Pierce has met this burden. To put it clearly, the facts of this case do not warrant forfeiture. The law in this context is typically used to confiscate firearms from those who are trafficking in weapons, *see United States v. Zrust*, 835 F.2d 192, 193 (8th Cir. 1987), and from those who are actively engaging in the commission of criminal activity. *See, e.g.*, *Dukes*, 432 F.3d at 912–13 (finding two unregistered firearm silencers and methamphetamine

after a drive-by shooting); *United States v. Barr*, 32 F.3d 1320, 1321–22 (8th Cir. 1994) (featuring a marijuana dealer who also possessed an unregistered sawed-off shotgun).

Mrs. Mann is not the typical person whose property is taken by government force. She is merely a spouse whose marital income was used by her husband to lawfully purchase the defendant firearms.  Dr. Mann, without Mrs. Mann's knowledge, committed a heinous crime against Dr. Pierce, who is now scarred for life.  The defendant firearms were not used in the commission of the crime for which Dr. Mann was convicted, and this forfeiture action is simply the collateral damage caused by Dr. Mann's criminal acts.  Mrs. Mann unexpectedly became the possessor of the defendant firearms when Dr. Mann was arrested and removed from the home.

Moreover, it would have been unlawful for Mrs. Mann to transfer the defendant firearms on her own because they were not registered to her, notwithstanding the fact that the government attempted to give her an opportunity to transfer the defendant firearms.  Mrs. Mann was placed in an untenable position: (a) transfer the weapons as directed and violate the law or (b) leave them in the gun safes until her husband's legal situation was sorted out. She did what any reasonable person would have done: she followed the advice of her lawyer[1], who communicated with the government and other interested parties in an attempt to lawfully transfer the defendant firearms.

---

[1]Mrs. Mann's lawyer, the Honorable Cathleen Compton, is one of the most well-respected lawyers in the state of Arkansas.  In addition to her success in private practice, she has served as an assistant attorney general and is now a circuit court judge.

There is no reason to believe this law was enacted for the purpose of seizing firearms from spouses in Mrs. Mann's position, especially considering that Mrs. Mann took steps through counsel to lawfully transfer the defendant firearms once Dr. Mann was arrested. Mrs. Mann never used the defendant firearms. Indeed, the closest she came to touching the defendant firearms was when she opened the safe to retrieve her jewelry and family papers. Because it has been shown by a preponderance of the evidence that the defendant firearms were not used in violation of the law, forfeiture is not warranted.

B.    Disposition of Weapons

Since it has been concluded that forfeiture is not warranted, the fate of the firearms must now be determined.

*1. Dr. Mann*

Dr. Mann's request for return of the defendant firearms is denied. Although the forfeiture is not warranted, federal law prohibits Dr. Mann from possessing the defendant firearms, actually or constructively, because Dr. Mann is a convicted felon currently serving a life sentence in federal prison. 18 U.S.C. § 922(g)(1). Normally, Dr. Mann would be entitled to the proceeds from the sale of the defendant firearms even though he cannot legally possess them. *See Henderson v. United States*, 135 S.Ct. 1780, 1785 (2015). That is not the case here, however, because Dr. Mann currently owes Dr. Pierce $122,500,000 as a result of Dr. Pierce's judgment against Mann in Arkansas state court. *See Trent P. Pierce and Melissa Pierce v. Randeep Mann*, Circuit Court of Crittenden County, Arkansas, No. CV-

2010-61.  A writ of execution was issued on that judgment and was returned unsatisfied.

Stipulated Facts ¶ 34, Doc. No. 99.  As a result, Dr. Pierce's judgment lien remains on Dr.

Mann's property.  *See* Ark. Code Ann. § 16-66-112.  Because of the unsatisfied judgment

lien against Dr. Mann, Dr. Mann's interest in the proceeds from the sale of the defendant

firearms will be paid to Dr. Pierce to satisfy Dr. Pierce's judgment lien.  *See id.*

### 2.  Mrs. Mann

Mrs. Mann's request for fifty percent (50%) of the proceeds from the sale of the

defendant firearms is denied.  The issue here is whether Mrs. Mann has standing to claim an

interest in the defendant firearms.  "In a [civil] forfeiture case, a claimant's Article III

standing turns on whether the claimant has a sufficient ownership interest in the property to

create a case or controversy.  This threshold burden is not rigorous."  *United States v. One

Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003).  The claimant only has to

show a "colorable interest in the property, redressable, at least in part, by a return of the

property."  *Id.* (quoting *United States v. 7725 Unity Ave. N.*, 294 F.3d 954, 957 (8th Cir.

2002)).

Mrs. Mann's standing hinges on whether she has a marital interest because the

defendant firearms were acquired with marital earnings.  *See* Sangeeta Mann's Trial Br. 6,

Doc. No. 80; *see also McDermott v. McDermott*, 986 S.W.2d 843, 845 (Ark. 1999) (holding

that there is a presumption that all property acquired by either spouse subsequent to the

marriage is marital property).  Arkansas law is clear, however, that "the law regarding marital

property does not apply in situations other than divorce." *Cloud v. Brandt*, 259 S.W.3d 439, 443 (Ark. 2007) (citing *Ellis v. Ellis*, 868 S.W.2d 83, 84 (Ark. 1994)).  Indeed, the Eighth Circuit has refused to recognize claimed marital interests as requisite ownership interests in forfeiture proceedings when state law limits the application of marital property law to divorce proceedings.  *See United States v. Cochenour*, 441 F.3d 599, 601 (8th Cir. 2006) (holding that because Missouri divorce law does not govern a spouse's claimed interest in forfeited property, the wife lacked the requisite ownership interest, and she lacked standing to challenge the forfeiture); *cf. United States v. Sigillito*, 938 F. Supp. 2d 877, 888–89 (E.D. Mo. 2013) (rejecting the notion that the wife had an interest in the properties at issue because Missouri's marital property division law limited its applicability to divorce).  As a result, Mrs. Mann lacks the requisite ownership interest to establish standing to claim the defendant firearms.

### 3.  Dr. Pierce

For the reasons discussed above, Dr. Pierce will receive 100% the proceeds from the sale of the defendant firearms.

## IV.  CONCLUSION

The government and Dr. Pierce are ordered to coordinate with this court to appoint a special master to begin the process of selling the defendant firearms with the proceeds to be paid to Dr. Pierce.

11

IT IS SO ORDERED this 14th day of March 2017.

_____
UNITED STATES DISTRICT JUDGE